**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

Eastern District of Kentucky
FILED

APR 27 2026

AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

CRIMINAL ACTION NO. 5:26-CR-36-KKC

UNITED STATES OF AMERICA                                   **PLAINTIFF**

V.                              **PLEA AGREEMENT**

KYSHAWN JOSHUA MAXWELL                              **DEFENDANT**

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter guilty pleas to Counts 1 and 2 of the Information. Count 1 charges a violation of 18 U.S.C. § 933(a)(1) and (a)(3), conspiracy to traffic firearms. Count 2 charges a violation of 18 U.S.C. § 922(o), illegal possession of a machinegun.

2. The essential elements of Count 1 are as follows:

   (a) That two or more persons conspired or agreed to knowingly ship, transport, transfer, cause to be transported, or otherwise dispose of a firearm to another person knowing or having reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony;

   (b) That at some time during the existence or life of the agreement or conspiracy, the defendant knew the essential objective of the agreement or conspiracy; and

   (c) That the defendant knowingly and voluntarily joined the agreement or conspiracy; and

1

(d) That the shipping, transporting, transferring, or disposition of the firearm was in or otherwise affecting interstate or foreign commerce.

3. The essential elements of Count 2 are as follows:

(a) That the defendant knowingly possessed a "machine gun;" and

(b) That the defendant knew, or was aware of, the essential characteristics of the firearm which made it a "machine gun" as defined by 18 U.S.C. § 921(a)(24).

4. As to Counts 1 and 2 of the Information, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

(a) On September 25, 2024, Kentucky State Police conducted a traffic stop on a vehicle traveling northbound on I-75 in Madison County in the Eastern District of Kentucky. The vehicle was operated by an Atlanta-based Lyft driver and occupied by two passengers: the Defendant and a female subject, both Canadian nationals. Due to the presence of the odor of marijuana, a search of the vehicle was conducted. During the search, officers located a tote in the trunk of the vehicle containing forty-three (43) firearms, including at least six (6) stolen firearms and five (5) firearms equipped with machinegun conversion devices. The occupants were taken into custody and later interviewed by law enforcement.

(b) Through the course of the interviews, the Defendant admitted that he had recently traveled to Atlanta, Georgia, from Canada and obtained the firearms from a source. After obtaining the firearms, the Defendant then secured a ride from a Lyft driver he had used in the past to take him to the United States-Canadian border near Detroit, Michigan, where the firearms were to be smuggled over the border. According to the Defendant, he would, then, retrieve the firearms on the Canadian side of the border and transport them into the interior of the country where they would be divvied up and sold to other individuals. The Defendant admitted to having done so at least two times prior since April of 2024 and being paid approximately $15,000 per trip to do so. The Defendant also stated his assumption and belief that the majority of the firearms recovered in the trunk of the vehicle were stolen.

(c) Law enforcement subsequently obtained a search warrant to download the contents of the Defendant's phone. On the phone, federal agents observed numerous photos and videos of firearms, some of which the Defendant had sent to

2

various social media accounts as well as messages discussing firearms and pricing. The phone also revealed "notes" listing out types of firearms that appeared to match the types of firearms recovered from the Lyft vehicle on September 25. In addition to the types or models of firearms listed, there were notations referencing "buttons" and "fully" which are terms known to refer to machinegun conversion devices and fully automatic firearms. ATF later determined that five of the firearms recovered on September 25 were, in fact, machineguns.

(d) The Defendant admits that he knowingly conspired with others to ship, transport, transfer, cause to be transported, or otherwise dispose of firearms to other persons knowing that the use, carrying, or possession of a firearm by any recipient would constitute a felony as defined under 18 U.S.C. § 932(a), including, but not limited to, the unlawful possession of a machinegun in violation of 18 U.S.C. § 922(o), the unlawful transportation of stolen firearms in violation of 18 U.S.C. § 922(i), and the smuggling of firearms in violation of 18 U.S.C. § 924(k)(2). The Defendant further admits that the firearms had traveled in interstate or foreign commerce.

(e) The Defendant further admits that he committed the offenses charged in this Information in connection with his participation in a group of five or more persons whose primary purpose was the commission of criminal offenses, specifically the illegal acquisition, transportation, and cross-border smuggling of firearms. The Defendant knew that the group had this criminal purpose. The group included, at a minimum: (1) the Defendant, who was responsible for traveling to the United States, taking custody of the firearms, and arranging their transport to the Canadian border; (2) an individual in the Atlanta, Georgia, area who served as the Defendant's source for acquiring the firearms, including stolen firearms and firearms equipped with machinegun conversion devices; (3) the female co-passenger, a Canadian national who accompanied the Defendant during the September 25, 2024, trip; (4) one or more individuals located in Canada who were responsible for receiving the firearms once they were smuggled across the border and distributing them to end buyers; and (5) one or more additional associates who coordinated the logistics of the smuggling operation, including the border-crossing arrangements. The Defendant knew that each of these individuals was participating in the group's firearms trafficking activities and that the trafficking of firearms was a primary purpose of the group. The Defendant had participated in this group's activities on at least two prior occasions since April 2024 and was compensated approximately $15,000 per trip for his role.

5. The statutory punishment for Count 1 is not more than 15 years imprisonment, not more than a $250,0000 fine, and not more than 3 years of supervised release. The

3

statutory punishment for Count 2 is not more than 10 years imprisonment, not more than

a $250,000 fine, and not more than 3 years of supervised release. A mandatory special

assessment of $200 applies, and the Defendant will pay this assessment to the U.S.

District Court Clerk at the time of sentencing.

6. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend

the following sentencing guideline calculations, and they may object to or argue in favor

of other calculations. This recommendation does not bind the Court.

(a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2023, Manual, will determine the Defendant's guidelines range.

(b) Pursuant to USSG § 1B1.3, the Defendant's relevant conduct includes the facts set forth in paragraph 4 and the provided discovery materials.

(c) Pursuant to USSG § 2K2.1(a)(4)(B), the base offense level is 20 as the offense involved a machinegun, a firearm described in 26 U.S.C. § 5845(a), and the Defendant is convicted under 18 U.S.C. § 933.

(d) Pursuant to USSG § 2K2.1(b)(1)(C), the offense level is increased by 6 levels as the offense involved 25 to 99 firearms.

(e) Pursuant to USSG § 2K2.1(b)(4)(A), the offense level is increased by 2 levels as the offense involved a stolen firearm.

(f) Pursuant to USSG § 2K2.1(b), the offense level determined from the application of subsections (b)(1) through (b)(4) may not exceed level 29.

(g) Pursuant to USSG § 2K2.1(b)(5)(C), the offense level is increased by 5 levels as the Defendant attempted or conspired to transport, transfer, sell, or otherwise dispose of two or more firearms knowing or having reason to believe that such conduct would result in the receipt of the firearms by an individual who intended to use or dispose of the firearms unlawfully.

(h) Pursuant to USSG § 2K2.1(b)(6)(A), the offense level is increased by 4 levels as the Defendant possessed a firearm or ammunition while attempting to leave

4

the United States or possessed a firearm or ammunition with knowledge, intent, or reason to believe that it would be transported out of the United States.

(i) Pursuant to USSG § 2K2.1(b)(8), the offense level is increased by 2 levels as the Defendant received an enhancement under § 2K2.1(b)(5) and committed the offense in connection with the Defendant's participation in a group, club, organization, or association of five or more person, knowing that the group, club, organization, or association had as one of its primary purposes the commission of criminal offenses.

(j) Pursuant to USSG § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

7. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

8. The Defendant recognizes that pleading guilty may have consequences with respect to his immigration status because he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the Defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

9. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guidelines range as determined by the Court at sentencing. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

10. The Defendant consents to and acknowledges the administrative forfeiture to the United States of all right, title, and interest in the firearms and ammunition seized by during this investigation. The Defendant agrees that this property is subject to forfeiture because a nexus exists between it and the offenses to which he is pleading guilty. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the property identified herein in any administrative or judicial proceeding or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he already has submitted. The Defendant understands and agrees that the forfeiture of the seized firearms and ammunition has been completed administratively, that the seized property will not be pursued judicially as part of this action, and that he can assert no further right, title, or interest in it. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

11. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by ATF during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph and agrees to take any steps necessary to assist the government in effectuating the abandonment, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States.

12. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before

7

transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

13. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees

8

that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

14. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

15. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

16. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

17. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this

9

Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.


JASON D. PARMAN
FIRST ASSISTANT
UNITED STATES ATTORNEY


Date: 4-27-26          By: _____

Francisco J. Villalobos II
Assistant United States Attorney


Date: 4-27-26          _____

Kyshawn Joshua Maxwell
Defendant


Date: 4/27/26          _____

Rhey Mills
Attorney for Defendant


10